UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LUIS NUNEZ-ROMERO,<br><br>Defendant. | Case No. 18-CR-00425-LHK-1<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT**<br><br>Re: Dkt. No. 17 |

Before the Court is Defendant Luis Nunez-Romero's ("Defendant") motion to dismiss the indictment for illegal reentry following deportation in violation of 8 U.S.C. § 1326. ECF No. 17 ("Mot."). Having considered the filings of the parties, the relevant law, and the record in this case, the Court GRANTS Defendant's motion to dismiss the Indictment.

**I.  BACKGROUND**

   **A. Factual Background**

Defendant, a citizen of Mexico, was admitted to the United States on or around March 2, 2002. ECF No. 17-1 ("NTA"). On November 6, 2008, an Immigration Enforcement Agent interviewed Defendant while Defendant was held in Santa Clara County jail in Milpitas, California. ECF No. 19 ("Oidem Decl.") ¶ 7. The government then determined that Defendant

1

had been convicted of an aggravated felony after Defendant's admission into the United States. *Id.* Accordingly, on November 7, 2008, Defendant was served a Form I-862, Notice to Appear ("NTA"). NTA at 1. The NTA charged that Defendant was subject to removal under "Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act (Act), as amended, in that, at any time after admission, you have been convicted of an aggravated felony as defined in Section 101(a)(43)(B) of the Act." *Id.* at 3. The NTA did not identify the address of the immigration court at which the NTA would be filed. *Id.* at 1. Instead, under the text, "YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at:," the NTA was left blank. *Id.*

Defendant was detained pending removal proceedings. Oidem Decl. ¶ 8. On November 13, 2008, the Immigration Court issued a "Notice of Custody Redetermination Hearing." ECF No. 19-3. The Notice of Custody Redetermination Hearing indicated that Defendant was scheduled for a "custody redetermination hearing" on November 24, 2008, at Immigration Court located at 630 Sansome Street, Room 475, San Francisco CA. *Id.* On November 24, 2008, Defendant appeared in front of the Immigration Court, where the Immigration Judge ordered Defendant removed ("November 2008 removal order"). *Id.*; ECF No. 17-3 ("November 2008 removal order"). Defendant waived his right to appeal. *Id.*

The November 2008 removal order was the sole removal order entered against Defendant. ECF No. 17 at 1. The removal order was subsequently reinstated against Defendant on September 8, 2009, April 18, 2011, and April 24, 2014. *Id.*; ECF No. 17-4.

**B. Procedural History**

On September 6, 2018, a grand jury in the Northern District of California returned an indictment ("Indictment") that charged Defendant with one count of a violation of 8 U.S.C. § 1326, Illegal Reentry Following Deportation. ECF No. 1 ("Indictment"). Specifically, the grand jury charged as follows: "On or about March 7, 2018, in Santa Clara County in the Northern District of California, the [D]efendant, . . . an alien, previously having been excluded, deported and removed from the United States on or about November 25, 2008, September 8, 2009, April

2

Case No. 18-CR-00425-LHK-1
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT

18, 2011, and April 24, 2014, was found in the United States, with the Attorney General of the United States and the Secretary for Homeland Security not having expressly consented to a re-application by the [D]efendant for admission into the United States." *Id.*

On November 4, 2019, Defendant filed a motion to dismiss the Indictment. ECF No. 17 ("Mot."). On December 2, 2019, the government opposed the motion, ECF No. 18 ("Opp'n"), and on December 16, 2019, Defendant filed a reply, ECF No. 20 ("Reply").

On January 9, 2020, the government filed a statement of recent decision. ECF No. 22. On January 23, 2020 and February 26, 2020, Defendant filed two statements of recent decision.[1] ECF Nos. 23, 26.

## II. LEGAL STANDARD

### A. Motion to Dismiss Indictment

Under Federal Rule of Criminal Procedure 12(b)(3)(B)(v), a defendant may move to dismiss an indictment on the ground that the indictment "fail[s] to state an offense." In considering a motion to dismiss an indictment, a court must accept the allegations in the indictment as true and "analyz[e] whether a cognizable offense has been charged." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002). "In ruling on a pre-trial motion to dismiss an indictment for failure to state an offense, the district court is bound by the four corners of the indictment." *Id.* A motion to dismiss an indictment can be determined before trial "if it involves questions of law rather than fact." *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir.), *cert. denied*, 478 U.S. 1007 (1986).

### B. Collateral Attack on a Deportation

"For a defendant to be convicted of illegal reentry under 8 U.S.C. § 1326, the Government must establish that the defendant left the United States under order of exclusion, deportation, or removal, and then illegally reentered." *United States v. Raya-Vaca*, 771 F.3d 1195, 1201 (9th Cir.

---

[1] Defendant also explained that "[s]hould it be helpful to the Court, the defenses requests the opportunity to file a supplemental brief of no more than 3 pages addressing all of the supplemental authority to date." ECF No. 26 at 2. The Court DENIES as moot Defendant's request for supplemental briefing.

3
Case No. 18-CR-00425-LHK-1
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT

2014) (internal quotation marks and citation omitted). "A defendant charged under § 1326 has a due process right to collaterally attack his removal order because the removal order serves as a predicate element of his conviction." *Id.* (internal quotation marks and citation omitted).

To demonstrate that a prior deportation cannot serve as the basis for an indictment for illegal reentry, 8 U.S.C. § 1326(d) requires that a defendant "demonstrate that (1) he exhausted the administrative remedies available for seeking relief from the predicate removal order; (2) the deportation proceedings 'improperly deprived [him] of the opportunity for judicial review'; and (3) the removal order was 'fundamentally unfair.'" *Id.* (quoting 8 U.S.C. § 1326(d)) (brackets in original). "To satisfy the third prong—that the order was fundamentally unfair—the defendant bears the burden of establishing both that the deportation proceeding violated his due process rights and that the violation caused prejudice." *Id.* (internal quotation marks, citation, and brackets omitted).

## III. DISCUSSION

In Defendant's motion to dismiss the Indictment, Defendant asserts that the United States Department of Homeland Security's failure to file a proper Form I-862, Notice to Appear ("NTA"), with the Immigration Court deprived the Immigration Court of jurisdiction to remove Defendant. Defendant asserts that this failure provides the grounds for Defendant to collaterally attack the Indictment under 8 U.S.C. § 1326(d). Defendant also claims that the Immigration Court lacked statutory authority to initiate removal proceedings because the NTA did not include the statutorily required time and place information.

For the reasons outlined below, the Court agrees with Defendant. The Immigration Court lacked jurisdiction to issue the November 2008 removal order because of the defective NTA. Further, this lack of jurisdiction permits Defendant to collaterally attack the Indictment under 8 U.S.C. § 1326(d). Because these facts are sufficient to warrant dismissal of the Indictment, the Court need not address Defendant's further argument that the Immigration Court lacked statutory authority.

### A. The Immigration Court Lacked Jurisdiction over Defendant

4

Case No. 18-CR-00425-LHK-1
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT

Defendant argues that the November 2008 removal order cannot constitute a prior lawful deportation that supports the single count violation of 8 U.S.C. § 1326, Illegal Reentry Following Deportation, charged in the Indictment. Mot. at 1. This is so, Defendant claims, because the NTA "did not identify the immigration court address where [the NTA] would be filed, which is a jurisdictional requirement under the regulatory scheme, including 8 C.F.R. § 1003.14(a) and 8 C.F.R. § 1003.15(b)(6)." *Id.* at 2. The government makes two responses to this argument. First, the government asserts that the requirements of 8 C.F.R. § 1003.14(a) is not actually jurisdictional in nature. Instead, the government maintains that 8 C.F.R. § 1003.14(a) sets forth only a "claim-processing rule" that does not limit the Immigration Court's adjudicatory authority. Opp'n at 4–11. Second, the government asserts that even if 8 C.F.R. § 1003.14(a) is jurisdictional in nature, Defendant had "actual notice" of the removal hearing such that jurisdiction adequately vested in the Immigration Court in any event. *Id.* at 11–13. The Court agrees with Defendant. The defective NTA deprived the Immigration Court of jurisdiction over Defendant for the purposes of the November 2008 removal order. The government's actions following the filing of the defective NTA did not vest the Immigration Court with jurisdiction.

The Court begins by providing a brief background of the statutory and regulatory scheme that sets forth the contents an NTA must contain. The Court then analyzes the question of whether 8 C.F.R. § 1003.14(a) and 8 C.F.R. § 1003.15(b)(6) set forth jurisdictional rules. Finally, the Court turns to the question of whether Defendant's purported "actual notice" of the address of the Immigration Court in which the NTA was filed may remedy a jurisdictional defect in the NTA.

### 1. Statutory and Regulatory Background

The Court begins by providing background on the regulatory scheme that sets forth the content that an NTA must contain. The Immigration and Nationality Act, 8 U.S.C. § 1101, *et seq.*, broadly delegates authority to the Attorney General to "establish such regulations . . . as the Attorney General determines to be necessary for carrying out this section." 8 U.S.C. § 1103(g)(2). Pursuant to this grant of authority, the Attorney General has promulgated regulations that speak to the "[j]urisdiction and commencement of proceedings" in Immigration Court. 8 C.F.R. § 1003.14.

5

In particular, 8 C.F.R. § 1003.14(a) dictates that "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service." 8 C.F.R. § 1003.14(a). A "charging document" is defined in the regulations to consist of several types of documents, potentially including "a Notice to Appear." 8 C.F.R. § 1003.13. Finally, the regulations require that an NTA contain certain information. 8 C.F.R. § 1003.15(b). Importantly for the instant case, the regulations dictate that an NTA "must" include the "address of the Immigration Court where the Service will file" the NTA. 8 C.F.R. § 1003.15(b)(6).

It is undisputed that the NTA at issue in the instant case lacked the "address of the Immigration Court where the Service" would file the NTA, as required by 8 C.F.R. § 1003.15(b)(6). NTA at 1. Accordingly, the first question before the Court is whether 8 C.F.R. § 1003.14(a) and 8 C.F.R. § 1003.15(b)(6) set forth jurisdictional rules, such that the NTA's failure to include the "address of the Immigration Court where the Service will file" the NTA deprived the Immigration Court of jurisdiction to issue the November 2008 removal order.

**2. 8 C.F.R. § 1003.14(a) and 8 C.F.R. § 1003.15(b)(6) Set Forth Jurisdictional Rules**

Defendant's motion to dismiss the Indictment is premised on the argument that 8 C.F.R. § 1003.14(a) and 8 C.F.R. § 1003.15(b)(6) set forth rules that govern the jurisdiction of the Immigration Court. As Defendant puts it, the "regulation requiring identification of the court address where the NTA will be filed goes to the authority of the immigration court to adjudicate a case—*i.e.*, to the court's subject matter jurisdiction." Reply at 9. The government disagrees, and argues that the regulations only set forth a "claim-processing rule." Opp'n at 4. Thus, the government claims that the failure to include the Immigration Court address in the NTA did not deprive the Immigration Court "of 'jurisdiction' over Defendant's removal proceedings insofar as it concerned the court's adjudicatory authority." *Id.* at 5.

The Court agrees with Defendant. The requirement that an NTA include the "address of the Immigration Court where the Service will file" the NTA, 8 C.F.R. § 1003.15(b)(6), is jurisdictional in nature. The Court reaches this conclusion because it is bound by a recent Ninth

6

Circuit decision, *Karingithi v. Whitaker*, 913 F.3d 1158 (9th Cir. 2019). According to Defendant, the Ninth Circuit's recent decision in *Karingithi* held that the applicable regulations "govern the subject matter jurisdiction" of the Immigration Court. Reply at 1. Thus, because "*Karingithi* is binding on this Court," Defendant claims that the Court must reject Defendant's argument that 8 C.F.R. § 1003.15(b) only sets forth a claim-processing rule. *Id.* at 2. The Court agrees. *Karingithi* stands for the proposition that 8 C.F.R. § 1003.14(a) and 8 C.F.R. § 1003.15(b)(6) are jurisdictional in nature.

In *Karingithi*, the Ninth Circuit considered the question of whether the Immigration Court lacked jurisdiction over removal proceedings when the NTA that served as the charging document failed to specify the date and time of the removal hearing as required by 8 U.S.C. § 1229(a)(1)(G)(i). 913 F.3d at 1159–60. The Ninth Circuit answered this question in the negative. *Id.* at 1160. In the course of doing so, the Ninth Circuit held that "the regulations, not § 1229(a), define when jurisdiction vests." Accordingly, because the operative regulations indicate that the date and time of the removal hearing need only be provided "where practicable," 8 C.F.R. § 1003.18(b), the Ninth Circuit held that omission of that information did not affect the Immigration Court's ability to hold a removal hearing. 913 F.3d at 1160. As the Ninth Circuit put it, "[t]he regulatory definition, not the one set forth in § 1229(a), governs the Immigration Court's jurisdiction. A notice to appear need not include time and date information to satisfy this standard. Karingithi's notice to appear *met the regulatory requirements and therefore vested jurisdiction in the IJ*." *Id.* (emphasis added).

The natural import of the *Karingithi* court's holding is that "[t]he regulatory definition" of an NTA "governs the Immigration Court's jurisdiction." *Id.* The regulatory definition of an NTA includes the requirement that an NTA include the "address of the Immigration Court where the Service will file" the NTA, 8 C.F.R. § 1003.15(b)(6). Thus, the requirement outlined in 8 C.F.R. § 1003.15(b)(6) "governs the Immigration Court's jurisdiction." This is precisely the conclusion at which most of the district courts in the Ninth Circuit have arrived when confronted with the applicability of *Karingithi*'s holding to the question before the Court. *See, e.g.*, *United States v.*

7

Case No. 18-CR-00425-LHK-1
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT

*Suchite-Ramirez*, No. 19-CR-00118-RMP, 2019 WL 4396142, at *2 (E.D. Wash. Sept. 13, 2019) (holding that the government's argument that 8 C.F.R. § 1003.15(b)(6) is claim-processing "directly contradicts the Ninth Circuit's reasoning in *Karingithi*"); *United States v. Gutierrez-Ramirez*, No. 18-CR-00422-BLF, 2019 WL 3346481, at *6 (N.D. Cal. July 25, 2019) ("[I]t is clear that *Karingithi* contemplates that Section 1003.15 is jurisdictional."); *United States v. Ramos-Urias*, No. 18-CR-00076-JSW, 2019 WL 1567526, at *2 (N.D. Cal. Apr. 8, 2019) ("*Karingithi* and *Bermudez-Cota* teach that satisfying the regulations, not the statute, is crucial to establish the Immigration Court's jurisdiction.").

As discussed *supra*, the language of the regulations governing the jurisdiction of the Immigration Court also supports the *Karingithi* court's conclusion. The regulations provide that jurisdiction "vests" only "when a charging document is filed with the Immigration Court," 8 C.F.R. § 1003.14, and a "Notice to Appear," is such a "charging document," 8 C.F.R. § 1003.13. The regulation at 8 C.F.R. § 1003.15(b)(6) provides that an NTA "must also include" "[t]he address of the Immigration Court where the Service will file the Order to Show Cause and Notice to Appear." *Id.* Thus, by the plain language of the regulations, a document that lacks "[t]he address of the Immigration Court where the Service will file the Order to Show Cause and Notice to Appear" is not an NTA, and therefore cannot "vest" jurisdiction with the Immigration Court. 8 C.F.R. §§ 1003.14, 1003.15(b)(6).

Further, as United States District Judge Jeffrey White has noted, 8 C.F.R. §§ 1003.15(a) and (c) contain a disclaimer that omission of the information mandated by those sections "shall not be construed as affording the alien any substantive or procedural rights." 8 C.F.R. § 1003.15(a), (c); *Ramos-Urias*, 2019 WL 1567526, at *2. By contrast, the regulation at issue in the instant motion, 8 C.F.R. § 1003.15(b), lacks such a disclaimer, which further confirms the jurisdictional scope of 8 C.F.R. § 1003.15(b). *See also United States v. Benitez-Dominguez*, No. 19-CR-99 (NGG), 2020 WL 903008, at *7 & n.5 (E.D.N.Y. Feb. 24, 2020) (relying on distinction between 8 C.F.R. § 1003.15(b) and neighboring subsections to conclude that "NTA lacked the address of the immigration court where it was to be filed is an independently sufficient error that deprived the

8

Case No. 18-CR-00425-LHK-1
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT

immigration court of jurisdiction to order . . . removal").

For instance, as Judge White noted, 8 C.F.R. § 1003.15(c) dictates that "[i]n the Notice to Appear for removal proceedings, the Service shall provide the following administrative information to the Immigration Court." Section 1003.15(c) goes on to list various pieces of information, such as the "alien's names and any known aliases," and the "alien's address." *Ramos-Urias*, 2019 WL 1567526, at *2. However, the section contains the aforementioned disclaimer, and the regulation thus dictates that omission of the required information "shall not be construed as affording the alien any substantive or procedural rights." *Id.* Section 1003.15(a), which only concerns orders to show cause, also contains the foregoing disclaimer. 8 C.F.R. § 1003.15(a).

By contrast, 8 C.F.R. § 1003.15(b), the regulatory section at issue in the instant motion, does not contain the disclaimer. The natural reading of the lack of disclaimer is that omission of the information required by 8 C.F.R. § 1003.15(b)(6) *does* afford the alien "substantive or procedural rights," in contrast to 8 C.F.R. §§ 1003.15(a) and (c). *See, e.g.*, *United States v. Ramos-Urias*, 2019 WL 1567526, at *2 ("The Court agrees with Mr. Ramos-Urias that the absence of the disclaimer in subsection (b) is significant. . . . Drafters of regulations and statutes are presumed to choose their words with precision." (citations omitted)); *see also N.L.R.B. v. SW Gen., Inc.*, 137 S. Ct. 929, 940 (2017) ("If a sign at the entrance to a zoo says 'come see the elephant, lion, hippo, and giraffe,' and a temporary sign is added saying 'the giraffe is sick,' you would reasonably assume that the others are in good health.").

As Judge White noted, this distinction "is particularly sensible." *Id.* at *3. Although 8 C.F.R. §§ 1003.15(a) and (c) both "describe categories of identifying information of which an alien is likely already aware," such as the alien's name and known aliases, 8 C.F.R. § 1003.15(b) demands that an NTA include information about *the removal process itself*. *Id.* "It is logical that an NTA's failure to include an alien's alias or preferred language, for example, would not carry the same consequences as an NTA's failure to include . . . the address of the Immigration Court where the NTA would be filed." *Id.*

9
Case No. 18-CR-00425-LHK-1
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT

In response, the government argues that insofar as *Karingithi* may be read to discuss the jurisdictional import of 8 C.F.R. § 1003.15(b)(6), this discussion is dicta. Opp'n at 3–4; *see also United States v. Diaz-Lastra*, No. 19-CR-00396-DWL, 2019 WL 4394542, at *3 (D. Ariz. Sept. 13, 2019) ("Those passages, however, are arguably dicta because they were unnecessary to [] resolve the narrow issue before the court. . . ."). The Court disagrees. The *Karingithi* court's discussion of the jurisdictional nature of the regulations served as the point of comparison that the *Karingithi* court used to resolve the question that the *Karingithi* court faced. The *Karingithi* court thus squarely confronted "an issue germane to the eventual resolution of the case, and resolve[d] it after reasoned consideration in a published opinion." *Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1186 (9th Cir. 2003). The *Karingithi* court's determination that the regulations set forth jurisdictional requirements for the Immigration Court is therefore not dicta. *Id.*; *see also Gutierrez-Ramirez*, 2019 WL 3346481, at *6 ("*Karingithi* clearly contemplates that the requirements in Section 1003.15 are 'for jurisdictional purposes.'"). Further, and in any event, the Court remains bound by "well-reasoned dicta" of the Ninth Circuit. *See, e.g.*, *Bank of Manhattan, N.A. v. F.D.I.C.*, 778 F.3d 1133, 1136 n.2 (9th Cir. 2015) ("Well-reasoned dicta is the law of the circuit." (internal quotation marks and citation omitted)). The reasoning of the *Karingithi* court clearly dictates that 8 C.F.R. § 1003.14(a) and 8 C.F.R. § 1003.15(b)(6) are jurisdictional, and this Court would be bound by this conclusion even if it were in fact well-reasoned dicta. *See, e.g.*, *Andrade v. United States*, No. 19-cv-00930-BAS-WVG, 2020 WL 835304, at *4 (S.D. Cal. Feb. 20, 2020) ("This Court cannot ignore the Ninth Circuit's statements regarding the scope of the law, even when made in dicta.").

Additionally, according to the government, "*Karingithi* did not address the meaning of the term 'jurisdiction' as recited in 8 C.F.R. § 1003.14(a)." Opp'n at 3; *see also United States v. Medina*, No. 18-CR-653-GW, 2019 WL 4462701, at *6 (C.D. Cal. Sept. 4, 2019) ("[N]owhere in [the] decision does the Circuit indicate that the reference to 'jurisdiction' means 'subject matter jurisdiction' rather than other types of jurisdiction."). Thus, the government argues, *Karingithi* may be read to refer only to a claim-processing rule. Opp'n at 6. The plain import of the

10

*Karingithi* court's language, however, suggests that the *Karingithi* court was concerned with more than just a claim-processing rule. For instance, the *Karingithi* court repeatedly pointed to the regulations as dispositive of when jurisdiction "vests" with the Immigration Court, and when the Immigration Court has jurisdiction "over [] removal proceedings." 913 F.3d at 1160, 1162. This language suggests that the Ninth Circuit's references to jurisdiction refer to subject matter jurisdiction. *See United States v. Cruz-Aguilar*, 394 F.Supp.3d 1313, 1318–19 (E.D. Wash. 2019) (reading Karingithi to proscribe "subject matter jurisdiction over a noncitizen's removal proceeding").

Indeed, other federal courts of appeals have understood the *Karingithi* language in this way. *See, e.g.*, *United States v. Cortez*, 930 F.3d 350, 359 (4th Cir. 2019) (citing *Karingithi* as an example of a case in which a court "treat[ed] § 1003.14(a) as though it implicates an immigration court's adjudicatory authority or 'subject matter jurisdiction'"). The parties in *Karingithi* also clearly briefed the issue in this way. *See, e.g.*, *Karingithi*, CA No. 16-70885, Supp'l Brief for Pet'r, Dkt. 56 at 19 (discussing the regulations' impact on "subject matter jurisdiction"); *id.*, Supp'l Brief for Resp., Dkt. 57 at 7 ("Under the controlling regulations, the Immigration Court had subject-matter jurisdiction over Karingithi's removal proceedings.").

Some district courts have attempted to limit the import of *Karingithi* by concluding that *only some* of the applicable regulations are jurisdictional in nature. For instance, in *United States v. Arteaga-Centeno*, No. 18-CR-00332-CRB, 2019 WL 3207849 (N.D. Cal. July 16, 2019), the court held that *Karingithi* should be read to indicate that "the jurisdictional provisions of the regulations are limited to §§ 1003.13–14," and do not include 8 C.F.R. § 1003.15. *Id.* at *7; *see also Diaz-Lastra*, 2019 WL 4394542, at *3 (same). However, the government does not advocate that interpretation of *Karingithi* in the instant case. On the contrary, the government's argument specifically hinges on the proposition that 8 C.F.R. § 1003.14 is *also* not jurisdictional. *E.g.*, Opp'n at 8 ("8 C.F.R. § 1003.14(a) is a claim-processing rule, not a jurisdictional one."). As a general matter, the Court agrees that it would be improper to needlessly "contort *Karingithi*" when "it is clear that *Karingithi* contemplates that Section 1003.15 is jurisdictional." *Gutierrez-*

11

Case No. 18-CR-00425-LHK-1
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT

*Ramirez*, 2019 WL 3346481, at *6.

Finally, in the course of its argument, the government cites various decisions from "the Fourth, Fifth, Seventh, Tenth, and Eleventh Circuits" as persuasive authority for the proposition that 8 C.F.R. § 1003.15(b) is not jurisdictional. Opp'n at 10. These cases undercut the government's argument, however. This is so because the authoring courts recognized that their decisions contradicted *Karingithi*, and hence reached a conclusion contrary to Ninth Circuit law. *See, e.g.*, *Perez-Sanchez v. United States Attorney Gen.*, 935 F.3d 1148, 1155 (11th Cir. 2019) (listing the Ninth Circuit as a circuit that has "accepted the proposition that 8 C.F.R. § 1003.14 sets forth a jurisdictional rule"); *Cortez*, 930 F.3d at 359 (4th Cir. 2019) (citing *Karingithi* as an example of a case in which a court "treat[ed] § 1003.14(a) as though it implicates an immigration court's adjudicatory authority or 'subject matter jurisdiction'"). This Court is bound by the case law of the Ninth Circuit.[2]

Accordingly, the Court agrees with Defendant that this Court is bound by *Karingithi*, and *Karingithi* stands for the proposition that 8 C.F.R. § 1003.14(a) and 8 C.F.R. § 1003.15(b)(6) are jurisdictional.[3] The Court proceeds to consider the government's argument that Defendant's "actual notice" of the "address of the Immigration Court where the Service will file" the NTA, 8 C.F.R. § 1003.15(b)(6), nonetheless remedied this jurisdictional defect.

### 3. Defendant's Purported "Actual Notice" of the Address of the Immigration Court Did Not Vest the Immigration Court with Jurisdiction

The government asserts that even if the Court concludes that under C.F.R. § 1003.14(a)

---

[2] For this reason, it is also of no consequence that the BIA held the regulations to be "claim-processing" in *Matter of Rosales Vargas*, 27 I. & N. Dec. 745 (BIA 2020). The Court is bound by Ninth Circuit's reasoned determination that the regulations are jurisdictional. *See, e.g.*, *Suchite-Ramirez*, 2019 WL 4396142, at *2 (explaining that argument that 8 C.F.R. § 1003.15(b)(6) is claim-processing "directly contradicts the Ninth Circuit's reasoning in *Karingithi*, in which the Court concluded that the regulatory requirements governing charging documents, including NTAs, are jurisdictional"). The Court acknowledges that the jurisdictional nature of 8 C.F.R. § 1003.14(a) and 8 C.F.R. § 1003.15(b)(6) is a "hot issue right now" and that it is possible that the Ninth Circuit will eventually change its approach. Oral Argument at 19:45, Guzman-Nunez v. Barr (9th Cir. 2020) (No. 19-70315), https://www.youtube.com/watch?v=axd_1oISfaI.

[3] In light of the controlling nature of *Karingithi*, the Court need not reach Defendant's argument that the government is judicially estopped from adopting the litigation position it adopts in the instant case. Reply at 2.

12

Case No. 18-CR-00425-LHK-1
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT

1   and 8 C.F.R. § 1003.15(b)(6), the requirement that an NTA include the "address of the

2   Immigration Court where the Service will file" the NTA is jurisdictional, the Court should still

3   find that the Immigration Court had jurisdiction over removal proceedings in the instant case.

4   Opp'n at 11. According to the government, "multiple documents" may be used to provide "the

5   requisite notice under" 8 C.F.R. § 1003.15(b)(6). *Id.* at 12. Here, the government asserts that the

6   Notice of Custody Redetermination Hearing served on the Defendant provided Defendant with

7   actual notice of the location at which the NTA was filed. *Id.* at 13. As Defendant notes, however,

8   the government's actual notice argument fails for both legal and factual reasons.

9   First, as a legal matter, and as United States District Judge Beth Labson Freeman

10  explained, "nothing in the regulations indicates that the Government can cure a non-compliant

11  Notice to Appear by serving a non-compliant Notice of Hearing, even if the Notice of Hearing

12  includes the information the Notice to Appear originally omitted." *Gutierrez-Ramirez*, 2019 WL

13  3346481, at *7; *see also Ramos-Urias*, 2019 WL 1567526, at *3("[T]he Court can find no

14  regulatory support for the proposition that a notice of hearing cures a regulatorily-deficient NTA

15  or can serve as a separate charging document.").

16  Second, as a factual matter, Judge Freeman explained that "there is no evidence that

17  Defendant's Notice of Hearing was ever served on him or that it was ever filed with the

18  Immigration Court." *Gutierrez-Ramirez*, 2019 WL 3346481, at *7. Thus, "even if a properly

19  served and filed Notice of Hearing could cure a faulty Notice to Appear," Judge Freeman held that

20  there was insufficient evidence that anything to that effect had happened in *Gutierrez-Ramirez*. *Id.*

21  The Court agrees with Judge Freeman's analysis of this issue. Here, too, both legal and

22  factual issues preclude the government's argument that the Notice of Custody Redetermination

23  Hearing cured the jurisdictional defect. Legally, as Judge Freeman observed, "nothing in the

24  regulations indicates that the Government can cure a non-compliant Notice to Appear by serving a

25  non-compliant Notice of Hearing, even if the Notice of Hearing includes the information the

26  Notice to Appear originally omitted." *Gutierrez-Ramirez*, 2019 WL 3346481, at *7.

27  Further, in the instant case, the government seeks to rely on the Notice of Custody

28
13
Case No. 18-CR-00425-LHK-1
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT

1 Redetermination Hearing. However, the operative regulation dictates that custody redetermination
2 hearings may occur in numerous different immigration courts, not just the immigration court with
3 jurisdiction over the removal proceedings. *See* 8 C.F.R. § 1003.19 ("Applications for the exercise
4 of authority to review bond determinations shall be made to one of the following offices, in the
5 designated order: . . . ."). Thus, the Notice of Custody Redetermination Hearing could not have
6 independently given Defendant notice of the specific location at which the NTA was filed.

Factually, there is no evidence that the Notice of Custody Redetermination Hearing ever fulfilled the requirements of 8 C.F.R. § 1003.15(b) in the instant case. Indeed, similar to *Gutierrez-Ramirez*, 2019 WL 334648, the Notice of Custody Redetermination Hearing only indicates that the Notice of Custody Redetermination Hearing was mailed to Defendant through a "custody officer." ECF No. 19-3. "There is no evidence that the Custodian Officer ever actually served the Notice of Hearing on Defendant." *Gutierrez-Ramirez*, 2019 WL 334648, at *6. Moreover, "there is no evidence that the Notice of Hearing was ever filed with the Immigration Court," as would be required for it to independently function as a kind of "amended charging document" under 8 C.F.R. § 1003.14. *Id.* These "issues render the Notice of Hearing non-curative here." *Id.*

The Court therefore concludes that the Notice of Custody Redetermination Hearing did not cure the jurisdictional defect caused by the NTA's violation of 8 C.F.R. § 1003.15(b). The Court therefore concludes that the Immigration Court lacked jurisdiction to issue the November 2008 removal order. The Court finally proceeds to consider whether Defendant satisfies the requirements of 8 U.S.C. § 1326(d).

**B. Defendant Satisfies the Requirements of 8 U.S.C. § 1326(d)**

The Court now analyzes the above findings in the context of 8 U.S.C. § 1326(d), which sets forth three prongs that a defendant must establish to successfully collaterally attack his prior removal order. "To satisfy the third prong—that the order was fundamentally unfair—the defendant bears the burden of establishing both that the deportation proceeding violated his due process rights and that the violation caused prejudice." *Raya-Vaca*, 771 F.3d at 1201 (internal

14

Case No. 18-CR-00425-LHK-1
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT

quotation marks, citation, and brackets omitted). Accordingly, the government argues that Defendant cannot satisfy the third prong of 8 U.S.C. § 1326(d). Opp'n at 13–15.

The Court notes that numerous district courts have held that the requirements of 8 U.S.C. § 1326(d) do not apply to defendants who challenge the validity of a deportation order when the Immigration Court lacked jurisdiction over the removal proceeding. *See, e.g.*, *Martinez-Aguilar*, 2019 WL 2562655, at *4 ("[B]ecause the Notice to Appear issued to Defendant was jurisdictionally deficient, the subsequent removal order which caused Defendant to be deported was invalid as issued without proper jurisdiction, and Defendant does not need to show that he was prejudiced by the lack of jurisdiction before the Immigration Court."); *United States v. Quijada-Gomez*, 360 F. Supp. 3d 1084, 1094 (E.D. Wash. 2018) ("[A] challenge to the immigration court's jurisdiction need not comply with § 1326(d)'s limitations on collateral attacks.").

United States District Judge Charles Breyer explained this conclusion in *United States v. Arteaga-Centeno*, 353 F. Supp. 3d 897 (N.D. Cal. 2019), *vacated on other grounds by United States v. Arteaga-Centeno*, 2019 WL 1995766. In *Arteaga-Centeno*, Judge Breyer explained that for the purposes of 8 U.S.C. § 1326(d), there is a distinction between "jurisdictionally-invalid orders and orders that are invalid for any other reasons." 353 F. Supp. 3d at 903. Judge Breyer noted that Ninth Circuit precedent compels the conclusion "that if the order is void on its face for want of jurisdiction, it is the duty of this and every other court to disregard it." *Id.* (internal alteration and quotation marks omitted) (quoting *Wilson v. Carr*, 41 F.2d 704, 706 (9th Cir. 1930)). The government's argument that 8 U.S.C. § 1326(d) applies "to jurisdictionally-invalid orders, . . . is thus precluded by the Ninth Circuit's requirement that courts must disregard invalid orders and that such orders are legal nullities." *Id.* (internal alteration and quotation marks omitted) (quoting *Wilson*, 41 F.2d at 706). Simply put, a Defendant's challenge to a jurisdictionally deficient removal order "is not a 'collateral challenge' to his deportation order, because there is no removal order to be collaterally attacked." *Id.*

In the instant case, the Court need not resolve the question of whether the foregoing

15
Case No. 18-CR-00425-LHK-1
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT

analysis is correct because Defendant meets the requirements of 8 U.S.C. § 1326(d). The Court finds that the November 2008 removal order was "fundamentally unfair" under 8 U.S.C. § 1326(d)(3). First, because jurisdiction never vested in the Immigration Court, the November 2008 removal order violated Defendant's due process rights. Courts in this circuit have held that when the Immigration Court enters a removal order without jurisdiction over a defendant, the Immigration Court violates the defendant's due process rights. *See, e.g.*, *United States v. Erazo-Diaz*, No. 18-CR-00311-TUC, 2018 WL 63222168, at *5 (D. Ariz. Dec. 4, 2018) ("The Court agrees that the order of removal is fundamentally unfair under § 1326(d)(3). Because it was entered without jurisdiction, it was a violation of Defendant's due process rights."); *see also United States v. Rodriguez-Rosa*, No. 18-CR-00079-MMD, 2018 WL 6635286, at *4 (D. Nev. Dec. 11, 2018) (finding fundamental unfairness where the immigration court did not have jurisdiction).

Second, in light of the defective NTA, Defendant was prejudiced because he was "removed when he should not have been." *See United States v. Aguilera-Rosa*, 769 F.3d 626, 630, 636 (9th Cir. 2014); *see also United States v. Camacho-Lopez*, 540 F.3d 928, 930 (9th Cir. 2006) ("Camacho was removed when he should not have been and clearly suffered prejudice."). The government attempts to distinguish the foregoing case law, and argues that the case law concerned situations outside the context of defective NTAs. Opp'n at 21–22. However, the Ninth Circuit's holdings are readily applicable to the context of a jurisdictionally defective NTA. As the Ninth Circuit has explained, even if the Immigration Court would have otherwise been able to remove Defendant "through a formal removal proceeding" that was jurisdictionally sound, Defendant's "removal on illegitimate grounds is enough to show prejudice." *United States v. Ochoa-Oregel*, 904 F.3d 682, 686 (9th Cir. 2018). Having shown a due process violation and prejudice, the Court concludes that Defendant has met his burden to show "fundamental unfairness."

In the instant case, Defendant has demonstrated a violation of his due process rights. Accordingly, Defendant "need not show exhaustion of administrative remedies or that he was denied judicial review pursuant to § 1326(d)(1) and (2)." *Ramos-Urias*, 348 F. Supp. 3d at 1037;

*see also Gutierrez-Ramirez*, 2019 WL 3346481, at *8 ("Because Defendant has demonstrated that his removal was fundamentally unfair, 'he need not show exhaustion of administrative remedies or that he was denied judicial review pursuant to § 1326(d)(1) and (2).'"), *Lazaro v. Mukasey*, 527 F.3d 977, 980 (9th Cir. 2008) ("A petitioner is entitled to relief from a defective [Notice to Appear] if he 'show[s] that the Immigration Court lacked jurisdiction'" (citation omitted)); *United Farm Workers of Am., AFL-CIO v. Ariz. Agric. Emp't Relations Bd.*, 669 F.2d 1249, 1253 (9th Cir. 1982) ("Exhaustion of administrative remedies is not required where . . . the administrative proceedings themselves are void."); *Reese Sales Co. v. Hardin*, 458 F.2d 183, 187 (9th Cir. 1972) (explaining that exhaustion of administrative remedies is not required where "the agency lacks power or jurisdiction to proceed").

In sum, Defendant has shown that Defendant is entitled to relief. The November 2008 removal order is void because the Immigration Court lacked jurisdiction over the removal proceedings. As the November 2008 removal order is void, the Court finds that the government cannot establish a predicate element—the prior removal or deportation of Defendant—of the sole offense in the Indictment. *See Raya-Vaca*, 771 F.3d at 1201. Accordingly, the Court GRANTS the motion to dismiss the Indictment with prejudice.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss the Indictment. The Indictment in the instant case is DISMISSED with prejudice.

**IT IS SO ORDERED.**

Dated: March 9, 2020

_____
LUCY H. KOH
United States District Judge

17
Case No. 18-CR-00425-LHK-1
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT